IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND BESSINGER,** *et al.*, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **INDIAN VALLEY GREENES, INC.,** *et al.*, | : | NO. 13-1501 |
| Defendants. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                        NOVEMBER 13, 2013

Plaintiffs, all purchasers of homes in the same adult residential community, bring a number of state law claims, as well as one federal claim, against the sellers and builders of the homes they purchased. Essentially, Plaintiffs claim that the Defendants made promises with respect to the quality of the constructed homes that they never intended to keep. Defendants have all moved to dismiss the Complaint.[1] Their motions will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the development and sale of homes in Indian Valley Greenes, an adult residential community located in Montgomery County, Pennsylvania. Plaintiffs each entered into independent Agreements of Sale ("Agreements") with Indian Valley Greenes, LP ("Indian Valley") for the purchase of homes in the development. Defendants are various entities responsible for the construction, development, and/or sale of the homes. Plaintiffs seek compensation for damages sustained to the homes from alleged construction defects and for allegedly making representations, guarantees, and promises that the Defendants allegedly never intended to keep regarding construction of the homes.

---

[1] At oral argument, the Court gave all parties an opportunity to supplement their briefs. None of the parties filed any supplemental briefing.

1

The Complaint advances nine claims: (1) Interstate Land Sales Full Disclosure Act ("the Disclosure Act"), (2) fraud, (3) Pennsylvania Unfair Trade Practices and Consumer Protection Law, (4) breach of contract, (5) breach of implied covenant of good faith and fair dealing, (6) breach of implied warranty of habitability, (7) breach of express warranty of habitability, (8) breach of express warranty of workmanship, and (9) negligence.  The Disclosure Act claim provides the sole basis for federal subject matter jurisdiction, as the parties are not diverse.

Pending are three motions to dismiss filed by various groups of Defendants, all of which raises substantially the same arguments.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted).  Thus, assessment of the sufficiency of a complaint is "a

context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").[2] The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The foregoing admonition does not demand the Court turn its back on reality, however. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court

---

[2] Defendants attach to their motions the Plaintiffs' respective Agreements of Sale. Although Plaintiffs did not attach the Agreements to their Complaint, the Complaint plainly relies upon the Agreements, and Plaintiffs' counsel has stipulated to the authenticity of the documents. Thus, the Court may, and will, consider the Agreements in deciding the pending motions. *Mayer*, 605 F.3d at 230.

need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d. Cir. 2008).

**DISCUSSION**

The primary defense argument centers on the sole federal claim raised by Plaintiffs, namely, the Disclosure Act claim. The Disclosure Act is a federal statute intended to ensure full disclosure of facts important to the purchasing decisions of prospective buyers of subdivision lots. *See Cost Control Mktg. and Mgmt., Inc. v. Pierce*, 848 F.2d 47, 48 (3d Cir. 1988). Among its exemptions is one for "the sale or lease of land under a *contract obligating the seller* or lessor to erect such a building thereon *within a period of two years*," 15 U.S.C. § 1702(a)(2) (emphasis added). For purposes of this exemption, the "sale occurs when the purchaser signs the sale agreement and incurs an obligation." *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 104 (3d Cir. 2000). Defendants argue that they are entitled to invoke this exemption because the Agreements at issue obligated them to complete construction on the homes within a period of two years, and, therefore, the Disclosure Act claim must fail because of the exemption. If the Disclosure Act claim fails, they contend, the remainder of the case should also be dismissed for lack of federal jurisdiction.

In *Markowitz*, the Third Circuit Court of Appeals held that the two-year exemption under the Disclosure Act does not apply where the buyer's sole remedy for the seller's non-completion of the building within two years is the return of the buyer's deposit, with interest. *Id.* at 105-06. The *Markowitz* court determined that because the parties' agreement precluded the remedy of specific performance, it essentially rendered the promise to complete the condo at issue in that

case in two years illusory, and therefore the contract did not fall under the Disclosure Act's exemption. *Id.* at 106. Just as most courts interpreting the Disclosure Act's exemptions have done, the Third Circuit Court of Appeals relied on the HUD guidelines associated with the Disclosure Act. Those guidelines state, in essence, that a seller may not take advantage of the exemption if the sales contract allows it to breach "virtually at will" or waives the buyer's right to specific performance. *See* 61 Fed. Reg. 13596, 13603. The guidelines also advise that if provisions discussing nonperformance or delays beyond a two-year period are included, they are acceptable if they boil down to legitimate defenses to contract actions, such as impossibility, frustration, or "events which are beyond the seller's reasonable control." *Id.*

Here, the Agreements of Sale provide for a "Settlement Date," which Indian Valley, as the Seller, has the exclusive right to extend no more than 90 days (the "Extended Settlement Date"). Doc. No. 3, Ex. A at ¶ 2. The "Extended Settlement Date" may be further extended if completion of the premises is delayed for specified circumstances "beyond Seller's reasonable control." *Id.* Notwithstanding these potential delays, the Agreements specify that:

> [I]n compliance with the [Disclosure Act], Seller guarantees that the House will be substantially completed within twenty-four (24) months after execution of this Agreement by Buyer, and nothing in this Agreement shall be construed to limit Buyer's remedy of specific performance if Seller fails to have the House substantially completed within such twenty-four (24) month period.

*Id.* (emphasis added). The Agreements of Sale define "complete" for purposes of construction of the homes as "the time of issuance of the Certificate of Occupancy . . ." *Id.*

As to remedies, as the excerpted provision above demonstrates, the Agreements provide for specific performance if Indian Valley fails to complete construction within two years. However, in what Plaintiffs argue is a contradictory provision, the Agreements set forth that in the event Indian Valley "for any reason cannot construct or complete the Premises due to"

governmental regulations, "unanticipated surface or subsurface drainage and/or latent conditions at the site," circumstances beyond the Seller's control, or any changes in circumstances that would make completing the construction a severe hardship, "Seller shall return to Buyer without interest, the *full deposit of monies*, including monies paid for options, and in such event Seller shall have *no further liability* whatsoever to Buyer." Doc. No. 3, Ex. A, at ¶¶ 2, 17 (emphasis added).[3]

Plaintiffs counter that the Agreements do not obligate the Sellers to construct the homes within two years of purchase. Plaintiffs contend that the sole remedy for Indian Valley's non-completion of the homes within two years is the return of deposit monies. At oral argument, Plaintiffs' counsel argued that the "for any reason" language of paragraph 17 gave Indian Valley the right to terminate the Agreements for any reason at all. Thus, Plaintiffs contend that the reference to specific performance in the Agreements does not render the exemption applicable because the "total and complete waiver of all damage remedies makes the specific performance remedy meaningless." Pl.'s Opp., Doc. No. 14, at 6.

What Plaintiffs overlook is that the only limitations on the right to specific performance or other types of damages occur in situations in which circumstances *out of the Defendants' control* interfere with completion of construction. Plaintiffs' reading of the "for any reason" language as prohibiting specific performance any time the Defendants feel like breaching the Agreements completely overlooks the words "due to" that follow, and that necessarily modify,

---

[3] After discussing the requirement that Seller provide marketable title, the prototype Agreement also provides that "[i]f Seller cannot deliver title as hereinafter provided, Buyer, as Buyer's sole and exclusive remedy, shall have the option of taking such title as Seller can give without abatement of Purchase Price or being repaid deposit monies as provided herein without interest and in the latter event, this Agreement shall terminate and neither party shall have further liability to the other." Doc. No. 3, Ex. A, at ¶ 9. Although Plaintiffs highlight this provision, it does not have anything to do with *construction* of the house.

that phrase.[4]  Under the circumstances specified in paragraph 17 of the Agreements, it is highly unlikely that Plaintiffs would be entitled to specific performance under Pennsylvania law, so their *right* to specific performance is not actually limited.  The common sense feature of this construct is borne out in the case law.  Numerous courts across the country have granted the Disclosure Act exemption to sellers when a contract "limited" the right to specific performance or excused a construction delay due to circumstances beyond the reasonable control of the seller, and the HUD guidelines support these provisions.  *See, e.g., Van Hook v. Residences at Coconut Point, LLC*, 364 Fed. Appx. 549 (11th Cir. 2010) (applying Disclosure Act exemption to a contract that allowed delays caused "by matters which are legally recognized as defenses to contract actions in the jurisdiction where the Unit is being constructed"); *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 858 (11th Cir. 2009) (two-year completion guarantee not illusory when contract excused delays for "acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages, or other delays beyond the control of the Seller"); *Baroi v. Platinum Condo. Develop.*, 874 F. Supp. 2d 980 (D. Nev. 2012) (applying the exemption to a contract that permits delays in construction due to circumstances beyond the seller's control).

---

[4]   Paragraph 17 of the Agreements reads in full:

> If Seller *for any reason* cannot construct or complete the Premises *due to* any present or future rules, regulations or restrictions by Federal, State, Municipal Governments, or any agency thereof or if the terms of this Agreement do not comply with such rules or regulations, or if Seller cannot complete the Premises by reasons by unanticipated surface or subsurface drainage and/or latent conditions at the site or as a result of any conditions beyond Seller's control or as a result in change in circumstances occurring alter the date of this Agreement that would impose a severe hardship on Seller, Seller shall have the right to cancel this Agreement upon written notice to Buyer delivered prior to Settlement, in which event Seller shall return to Buyer without interest, the full deposit of monies, including monies paid for options, and in such event Seller shall have no further liability whatsoever to Buyer.

Doc. No. 3, Ex. A, at ¶ 17 (emphasis added).

Plaintiffs also argue that Defendants only included the two-year construction obligation in the contract "for purpose of evasion" of the Disclosure Act.[5] They then go on to argue, based on an Eleventh Circuit Court of Appeals case, that it is up to the Defendants to produce evidence that they structured the transaction to take advantage of a Disclosure Act exemption for a legitimate business purpose, and that because the promise to complete the houses within two years was illusory, Defendants were necessarily trying to evade the Disclosure Act.

Taking up the latter issue first, the Court has already found that the promise to build within two years was not illusory. The former issue – what "for purpose of evasion" means and how it fits into the analysis of the Disclosure Act exemptions – appears to present a question of first impression in this Circuit. It is true that the Disclosure Act provides that a seller may not seek to take advantage of a statutory exemption "for purpose of evasion" of the statute. *See* 15 U.S.C. § 1702(a). How that language applies, however, is unclear. The case cited by Plaintiffs, *Gentry v. Harborage Cottages-Stuart LLP*, 654 F.3d 1247, 1257 (11th Cir. 2011), is one of only two appellate cases to address the meaning of the phrase "for purpose of evasion" in the Disclosure Act.

In *Gentry*, the defendants argued that although they had failed to meet the Disclosure Act's requirements, they were not liable for any violations of the Act because they qualified for exemptions. *Id.* at 1254. When contracting with the plaintiff-buyers, the defendants had structured the sales of 126 condominium units to meet Disclosure Act exemptions by including a two-year construction guarantee in 36 contracts. In doing so, the defendants were able to take advantage of the two-year construction exemption under § 1702(a)(2) for those 36 units, while

---

[5] Plaintiffs argue that the language "in compliance with the [Disclosure Act]," which precedes the 24 month construction guarantee, is misleading because it makes it sound as though Defendants intend to meet the obligations of the Disclosure Act rather than take advantage of a Disclosure Act exemption. The 24 month guarantee does, however, bring Defendants into compliance with the Disclosure Act, as it enables them to meet the requirements for an exemption from the rest of the provisions of that Act.

the remaining 90 units qualified for an exemption under § 1702(b)(1) which excuses subdivisions containing fewer than one hundred units from the requirements of the statute. The plaintiffs countered that the defendants were not entitled to those exemptions because the defendants had structured the transactions in that manner in order to evade the Disclosure Act's requirements. *Id.*

As a threshold matter, the Eleventh Circuit Court of Appeals found "no 'evasion' in a seller's conscious decision to seek an exemption because Congress, through a roster of exemptions in § 1702, clearly intended that not all interstate land sales should be regulated by federal law." *Id.* at 1257. However, the court held that in order to prove that transactions are not structured "for purpose of evasion" of the statute, "[a] seller seeking an exemption under [the Disclosure Act] must produce factual evidence demonstrating that the method of disposition has a real world objective that manifests a legitimate business objective," in addition to showing that it meets the technical qualifications for the exemption. *Id*.

In placing the burden on the defendants to prove not only that they technically qualify for an exemption but also that they are seeking to take advantage of the exemptions for legitimate business reasons, the *Gentry* court reasoned that the Disclosure Act is a remedial statute, and therefore any exemptions should be narrowly construed. *Id.* at 1258 (citing *Markowitz*, 906 F.2d 100 at 105). In addition, the court construed the "purpose of evasion" language to be an additional requirement for obtaining an exemption, rather than as an exception to otherwise applicable exemptions. *Id.* at 1258-59. Ultimately, because the defendants offered no evidence of any legitimate business reason for the structure of their transactions, the court upheld the district court's grant of summary judgment in favor of the plaintiffs on the Disclosure Act claim.

The Eight Circuit Court of Appeals took a different approach. *See Atteberry v. Maumelle Co.*, 60 F.3d 415, 421 (8th Cir. 1995). In *Atteberry*, the plaintiffs claimed that defendants had violated the Disclosure Act by making false promises about properties in the proposed subdivision, and the defendants moved for summary judgment, contending that they were exempt from the Act's requirements. *Id.* at 418. In retort, plaintiffs argued that the defendants added a two-year construction requirement for the purpose of evading the Disclosure Act's requirements. Looking at the statutory language, the *Atteberry* court concluded that because "[e]ven a good-faith use of the enumerated exceptions arguably could be viewed as an evasion of the Act . . . the phrase 'adopted for the purpose of evasion of this chapter' must be read more narrowly and confined to use of the enumerated exceptions with fraudulent intent." *Id.* at 421. The court found this approach to be consistent with the purposes of the Disclosure Act: "to prohibit and punish fraud in ... land development enterprises," or "to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property" *Id.* at 421 (internal citations and quotations omitted).

Consequently, the court held that in order to deprive a seller of an otherwise applicable exemption, plaintiffs must show that "in including [a provision intended to take advantage of a statutory exemption] in the standard sales contract, defendants acted with fraudulent intent, *i.e.*, that at the time of contracting they did not intend . . . to fulfill [the] obligations under [that] provision." *Id.* Because plaintiffs failed to carry that burden, their Disclosure Act claim was dismissed. *Id.* at 421-22.

This Court adopts the Eighth Circuit's construct. The Court concludes that the Eleventh Circuit's approach does not align as well with the antifraud underpinnings of the Disclosure Act

10

as does the Eighth Circuit's.  Moreover, the Eleventh Circuit's approach is potentially underinclusive, in that nearly any seller who structures a transaction to take advantage of an exemption, even a seller acting in bad faith, conceivably could come up with some legitimate business reason to meet the Eleventh Circuit's test simply by pointing to cost savings associated with avoiding the cost of compliance with the Disclosure Act.  On the other hand, requiring a showing of fraud as a predicate to claiming an exemption, as the Eighth Circuit does, is both consistent with the Act's antifraud purposes and more likely to actually apply to sellers who are attempting to evade the statute in bad faith without imposing an additional burden on sellers who complied with the Disclosure Act in good faith.

Here, aside from their arguments that the promise to build within two years was illusory, which fail for the reasons discussed above, Plaintiffs neither plead nor argue that Defendants included the two-year construction deadline in order to defraud the Plaintiffs.  Thus, the Court will dismiss Plaintiff's Disclosure Act claim.  With no remaining federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and will dismiss the case in its entirety.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendant state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

**CONCLUSION**

For the foregoing reasons, the Defendants' Motions to Dismiss are granted, and Plaintiffs' Complaint is dismissed without prejudice.  An appropriate Order follows.

                                       BY THE COURT:

                                       S/Gene E.K. Pratter
                                       GENE E.K. PRATTER
                                       United States District Judge